**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TERRELL ESCO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-02324 |
| | ) | |
| THE CITY OF CHICAGO, a Municipal | ) | Honorable Elaine E. Bucklo |
| Corporation; Chicago Police Officers MATT | ) | |
| SEGOVIA, RAQUEL ALTRUZ, NIKO LOPEZ, | ) | Magistrate Beth W. Jantz |
| NICHOLAS CLEDON, SEAN DRISKILL, | ) | |
| JONATHAN FANTAUZZI, VIOLETA | ) | |
| SANTILLAN, ARTHUR BROWN, NATHANIEL | ) | |
| J. HOLLIS, MAURICIO RODRIGUEZ, and JAIR | ) | |
| TRUJILLO-AYALA, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO DISMISS**

Defendants Matt Segovia, Raquel Altruz, Niko Lopez, Nicholas Cledon, Sean Driskill, Jonathan Fantauzzi, Violeta Santillan, Arthur Brown, Nathaniel Hollis, Mauricio Rodriguez, Jair Trujillo-Ayala, and the City of Chicago (City), by and through one of their attorneys, Carolyn M. Nevin, Assistant Corporation Counsel, move to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of their motion, defendants state as follows:

**BACKGROUND**

On the night of May 9, 2020, Officer Sean Driskill was using a police observation device ("POD camera") to conduct video surveillance of a residence located at 344 North Pine Avenue in Chicago. (Pl.'s Compl. ¶¶ 4, 21, ECF No. 1.) While monitoring the live video stream, he observed a man leave the residence and walk down the street toward a group of individuals while holding a

firearm.[1] (*Id.* ¶ 5.) Officer Driskill broadcast his observations over the zone radio and Officers Lopez, Segovia, and Cledon responded to the call. Upon arrival, they observed plaintiff and another individual standing outside of a vehicle that was stopped in the middle of the road. (*Id.* ¶ 6; Ex. A, Segovia's BWC at 2:45-3:20; Ex. B, Cledon's BWC at 1:50-2:10.) As the officers approached the men, plaintiff looked in their direction, threw a handgun under a vehicle, and then fled on foot. (Pl.'s Compl. ¶ 6; Ex. A at 2:57-3:18; Ex. B at 1:55-2:15.)

Officer Segovia ordered plaintiff to "come here," but he disobeyed the order and continued running in the opposite direction. (Ex. A at 2:57-3:18.) Officers Lopez and Cledon gave chase and radioed plaintiff's location and direction of travel. (Ex. B at 1:55-3:55.) Multiple officers arrived to assist, including Officers Santillian and Brown, who managed to stop and detain plaintiff on the other side of a park. (Pl.'s Compl. ¶ 9; Ex. C, Brown's BWC at 0:00-1:00.) Officer Brown conducted a protective pat down and felt a large object near plaintiff's knee. (Ex. C at 0:00-1:00; Ex. D, Rodriguez's BWC at 2:00-2:30.) Plaintiff then volunteered that he had "a lot of weed on [him]." (Ex. D at 2:00-2:30.) Shortly thereafter, Officer Rodriguez conducted a more thorough search and recovered a large bag of cannabis from plaintiff's pants. (Pl.'s Compl. ¶ 11; Ex. D. at 2:00-2:30.) The large bag contained 23 single-gram bags, eight 5-gram bags, two round containers containing 6 grams of cannabis, and a blue package containing 7 grams of cannabis. (Ex. E, Original Case Incident Report.) Around this time, one of the officers stated that plaintiff was not the individual who was seen on the POD camera exiting the residence at 344 North Pine. (Pl.'s Compl. ¶ 12; Ex. B at 6:09-6:17.)

Meanwhile, Officer Segovia remained in the area of 344 North Pine and retrieved the firearm that plaintiff threw under a car. (Pl.'s Compl. ¶ 8; Ex. A at 3:09-3:18.) It was a .40-caliber semi-automatic handgun and was loaded with 15 rounds of ammunition. (Ex. A at 4:40-5:00.) After making

---

[1] The man with the gun was not plaintiff. (Pl.'s Compl. ¶ 7.) He did not look like plaintiff and was not dressed like him. (*Id.*)

the gun safe, Officer Segovia used his radio to inform his partners (and other officers in the area) that the weapon had been recovered. (Ex. A at 3:15, 4:40-4:50; Ex. B at 3:18.)

Plaintiff was arrested and transported to the police station for processing. (Pl.'s Compl. ¶¶ 12-13.) He was subsequently charged with being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2020)) and unlawfully possessing cannabis (720 ILCS 550/4(c) (West 2020)). (Ex. F, Certified Statement of Disposition.) On June 11, 2021, the State dismissed the charges against him. (Pl.'s Compl. ¶¶ 22-23.)

Thereafter, plaintiff commenced this action under 42 U.S.C. § 1983 seeking redress for alleged violations of his state and federal rights. In his complaint, he alleges false arrest (count I), unreasonable search (count II), unlawful pretrial detention (count III), malicious prosecution (count IV), indemnification (count V), and *respondeat superior* (count VI).

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, plaintiff's complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic* v. *Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court must accept all of the plaintiff's factual allegations as true when reviewing the complaint, conclusory allegations merely restating the elements of a cause of action do not receive this presumption: "A complaint must allege facts to support a cause of action's basic elements; the plaintiff is required to do at least that much." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014).

A twist on the usual standard of review is at play here: When videotapes of the relevant events are incorporated by reference into the complaint and are central to the claims, courts need not accept the factual allegations as true if they are blatantly contradicted by the videos. See *Bogie v. Rosenberg*, 705

F.3d 603, 608-09 (7th Cir. 2013) (district courts are free to consider video recordings that are referenced in the complaint and central to the claim; to the extent the video conflicts with the complaint, the video controls); *Brownmark Films, LLC v. Comedy Partners, LLC v. Comedy Partners*, 682 F.3d 687, 690-91 (7th Cir. 2012) (stating that it makes "eminently good sense" to extend the incorporation-by-reference doctrine to video recordings); *Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018) ("When video footage firmly settles a factual issue, there is no genuine dispute about it, and [courts] will not indulge stories clearly contradicted by the footage."); *Henderson v. Rangel*, No. 19-cv-06380, 2020 WL 5642943 (N.D. Ill. Sept. 21, 2020) (body-worn cameras and police reports were incorporated by reference into plaintiff's complaint); *Hyung Seok Koh v. Graf*, No. 11-cv-02605, 2013 WL 5348326 (N.D. Ill. Sept. 24, 2013) (considering video at the motion-to-dismiss stage).

Here, this court may consider the officers' body-worn cameras and the police reports because they are referenced in the complaint and central to plaintiff's claims. (Pl.'s Compl. ¶¶ 12, 14, 18, 20-22.) For example, plaintiff alleges that the officers "can be heard on body worn camera discussing the fact that [he] was not the individual they saw [on the POD camera] with the gun." (Pl.'s Compl. ¶ 12.) He also avers that the POD camera and body-worn videos were exchanged during discovery in the criminal case, which "confirmed that [he] was not the individual seen with the gun." (*Id.* ¶ 21.) Plaintiff then asserts that his criminal case was dismissed because his defense attorney "urged the state's attorney to closely examine" the evidence tendered in discovery—*i.e.*, the BWC and POD camera footage. (*Id.* ¶ 22.) Based on these allegations, the videos are clearly central to his claims.

Moreover, to the extent plaintiff makes only a cursory reference to the videotapes and police reports, there is no dispute that many of his allegations—specifically, those describing the video surveillance of 344 North Pine Avenue, the officers' arrival at the scene and encounter with the group of individuals, as well as the recovery of the gun—assert facts he knows only because he viewed that footage. (See Pl. Compl. ¶¶ 4-9; Ex. A at 2:45-3:18; Ex. B at 1:50-2:15.) See also *Haligas v. City of*

*Chicago*, No. 22 C 313, 2022 WL 2340878, at *3 (N.D. Ill. June 29, 2022) (considering body-worn camera video at the motion to dismiss stage because plaintiff relied on that footage in formulating her complaint). Therefore, because the body worn cameras and police reports are incorporated by reference into the complaint and are central to plaintiff's claims, this Court may consider it at the motion to dismiss stage.

## ARGUMENT

Plaintiff's claims should be dismissed for four reasons: First, the due process clause does not apply to any of his section 1983 claims. Second, plaintiff's arrest and pretrial detention were supported by ample probable cause, thereby invalidating any Fourth Amendment claim and state-law malicious prosecution claim. Third, the officers were justified in conducting a protective pat-down and search incident to arrest. Fourth and finally, the state law indemnification and *respondeat superior* claims must be dismissed because plaintiff failed to establish an underlying claim for relief. And, since repleading cannot solve these problems, the dismissal should be with prejudice.

## I. THE FOURTEENTH AMENDMENT DOES NOT APPLY

In his complaint, plaintiff maintains that defendants violated his Fourth and Fourteenth Amendment rights by unlawfully searching him (count I), arresting him without probable cause (count II), and unlawfully holding him in pretrial detention (count III). Plaintiff's claims, to the extent they are grounded in the due process clause, cannot withstand a motion to dismiss because they are governed exclusively by the Fourth Amendment.

In *Lewis v. City of Chicago*, 914 F.3d 472, 479 (7th Cir. 2019), the Seventh Circuit explained that "all section 1983 claims for wrongful pretrial detention—whether based on fabricated evidence or some other defect—sound in the Fourth Amendment." In so holding, the court distinguished a claim for wrongful *conviction* based on fabricated evidence from a claim for wrongful *pretrial detention* based on fabricated evidence, noting that convictions based on fabricated evidence always violate a criminal-

- 5 -

defendant's right to due process. *Id.* at 479-80; see also *Camm v. Faith*, 937 F.3d 1096, 1105 (7th Cir. 2019). Applying *Lewis*, courts in the Seventh Circuit have dismissed wrongful pretrial detention, false-arrest, and unlawful search claims brought under the Fourteenth Amendment's due process clause by plaintiffs who did not allege any post-trial deprivation of liberty. See, *e.g.*, *Moorer v. Platt*, No. 1:18-cv-3796, 2020 WL 814924, at *2 (N.D. Ill. Feb. 19, 2020); *Henderson v. Rangel*, No. 1:19-cv-06380, 2020 WL 5642943, at *3 (N.D. Ill. Sept. 21, 2020); *Walker v. City of Chicago*, 1:21-CV-02648, 2022 WL 971891, at *3 (N.D. Ill. Mar. 31, 2022) ("a false-arrest claim is brought under the Fourth Amendment—not the Fourteenth Amendment's Due Process Clause"); *Smith v. Toledo*, No. 1-20-cv-03054, 2021 WL 3883076 at *3 (N.D. Ill. Aug. 31, 2021) (dismissing plaintiff's false arrest, unlawful search, and unlawful pretrial detention claims "to the extent they sound in the Fourteenth Amendment.").

In this case, plaintiff was never convicted—the State dismissed the charges against him (Pl.'s Compl. ¶ 22)—meaning that his detention was entirely pretrial. Because plaintiff was not convicted, the process guaranteed by the Constitution did not fail and defendants' alleged misconduct did not violate section 1983 via the due-process clause. In accordance with *Lewis*, this Court should dismiss counts I, II, and II, to the extent they allege a due-process violation.

## II.     THE FOURTH AMENDMENT CLAIMS

Turning to the merits, plaintiff's Fourth Amendment claims of false arrest and unlawful pretrial detention cannot survive a motion to dismiss because the facts captured on the officers' body-worn cameras establish that they had probable cause to believe he committed a crime. Moreover, plaintiff's unlawful search claim fails because the officers were permitted to conduct a protective pat-down and search incident to arrest. We address each in turn.

### A.     The False Arrest & Unlawful Pretrial Detention Claims

Plaintiff contends that he was falsely arrested and unlawfully detained pending trial because there was no probable cause to support the felony charges. (Pl.'s Compl. ¶¶ 27, 33.) Since the existence of probable cause is an absolute bar to claims of false arrest and unlawful pretrial detention, we address both claims in a single analysis. See *Gomez v. Kruger*, No. 12 C 4804, 2019 WL 3321842, at *3 (N.D. Ill. July 24, 2019) (addressing plaintiff's false-arrest and unlawful-pretrial-detention claims in a single analysis).

As established in *Manuel v. City of Joliet*, 137 S. Ct. 911, 918-19 (2017), government officials are prohibited from detaining a person without probable cause. It is well settled that "probable cause to believe that a person has committed *any* crime will preclude a false arrest [and unlawful pretrial detention] claim, even if the person was arrested on additional or different charges for which there was no probable cause." *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). Probable cause exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime. *United States v. Sands*, 815 F.3d 1057, 1062 (7th Cir. 2015). Probable cause does not require certainty. Rather, it is a fluid concept that relies on the common-sense judgment of the officers based on the totality of the circumstances. *Hart v. Mannina*, 798 F.3d 578, 587 (7th Cir. 2015). In this case, the historical facts captured on the officers' body worn cameras conclusively establishes that they had probable cause to arrest plaintiff for (1) unlawful possession of cannabis and (2) obstructing a peace officer.

### 1.     *Unlawful Possession of Cannabis*

Turning to the first, the officers had probable cause to believe that plaintiff unlawfully possessed cannabis. Section 4 of Illinois's Cannabis Control Act (720 ILCS 550/4(c) (West 2020) states that "it is unlawful for any person [to] knowingly possess cannabis." Possession may be actual

or constructive. *People v. Balark*, 2019 IL App (1st) 171626, ¶ 94. Actual possession is the exercise of present personal dominion over illicit material and exists when the person exercises immediate and exclusive dominion or control over the contraband. *Id.* However, it does not require "present personal touching" of the material. *Id.* Actual possession of a contraband may be proven by evidence that the person tried to conceal or throw away the illicit material. *Id.*

Here, the body-worn camera footage shows that officers recovered a large bag of cannabis that was concealed in plaintiff's pants, near his knee. (Ex. C at 0:00-1:00; Ex. D. at 2:00-2:30.) Not only did plaintiff have immediate and exclusive control over the contraband, but he also had knowledge of its existence. During the protective pat-down, plaintiff told the officers that he ran because he "[has] a lot of weed on [him]." (Ex. D at 2:00-2:30.) Given the totality of the circumstances, including plaintiff's inculpatory statement and subsequent recovery of cannabis from his pants, the officers had probable cause to arrest him for unlawfully possessing cannabis. See *People v. Henderson*, 2022 IL App (3d) 190791-U (affirming defendant's conviction where officers recovered cannabis that was concealed in his underwear).

### 2. *Obstructing a Peace Officer*

Plaintiff's false arrest and unlawful pretrial detention claims are doomed for another reason: the officers had probable cause to believe he obstructed a peace officer. Section 31-1(a) of the Illinois Criminal Code provides that: "[a] person who knowingly resists or obstructs the performance by one known to the person to be a peace officer . . . of any authorized act within his or her official capacity commits a Class A misdemeanor." 720 ILCS 5/31-1(a) (West 2020). Where, as here, a person runs away from a lawful *Terry* stop, he is resisting or obstructing an authorized act of the officer. *People v. Eyler*, 2019 IL App (4th) 170064, ¶ 23. The officer, however, must be justified in detaining the person at the time of the flight. *Id.* Because courts in Illinois have construed section 31-1(a) to require that an officer's order to stop be lawful, we briefly set forth the principles regarding *Terry* stops.

In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court provided an exception to the warrant and probable cause requirements. Pursuant to *Terry*, a police officer may conduct a brief, investigatory stop of a person where the officer reasonably believes that the person has committed, or is about to commit, a crime. *Id.* at 22. A *Terry* stop must be justified at its inception, and the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. *Id.* at 20-21. The officer's level of suspicion must be more than an inarticulate "hunch." *Id.* at 27. The officer's conduct is judged by an objective standard, which analyzes whether the facts available to the officer at the moment of the stop justify the action taken."[2] *Id.* at 21-22.

In this case, the officers were justified in attempting to effectuate a *Terry* stop. The record reveals that Officer Driskill was monitoring video footage from a POD camera in real time. He observed a person holding a gun and communicated his observations to officers on the ground by using the zone radio. He gave them a specific address—344 North Pine Avenue—and Officers Lopez, Segovia, and Cledon responded to that location. Upon arrival, the officers observed a vehicle stopped in the middle of the street with two individuals standing next to it. Because the officers were entitled to rely on Officer Driskill's report of a person with a gun, they were justified in attempting to effectuate a *Terry* stop to further investigate whether the men in the street possessed a gun. See, e.g., *People v. Eyler*, 2019 IL App (4th) 170064, ¶ 35 (officers were justified in attempting to effectuate a *Terry* stop where they received information from a 911 caller that a person was riding a bike and behaving erratically). Thus, once plaintiff began his unprovoked flight in response to the attempted *Terry* stop, the officers had probable cause to arrest him for resisting a peace officer. *People v. Johnson*, 408 Ill. App.

---

[2] These principles have been codified in section 107-14 of the Illinois Code of Criminal Procedure of 1963 (725 ILCS 5/107–14 (West 2020) ("a police officer is authorized to detain a person in public for a reasonable period of time when the officer can reasonably infer from the circumstances that the person has committed, is committing, or is about to commit a criminal offense.").

3d 107, 122 (2010) (holding that flight from a lawful *Terry* stop provides the police with probable cause to arrest for obstructing a peace officer).

Furthermore, even if this Court were to find that the attempted *Terry* stop was unlawful, plaintiff's presence in the area where a crime reportedly occurred and his unprovoked flight, turned their otherwise ungrounded suspicion into suspicion that justified his ultimate stop and detention. *Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000) (the defendant's presence in a high-crime area as well as his unprovoked flight upon seeing police officers, gave the officers reasonable suspicion to stop him and investigate further). In other words, when the information from Officer Driskill is combined with plaintiff's spontaneous flight, the officers had reasonable suspicion to believe he possessed a firearm. Accordingly, the officers had lawful authority to conduct a *Terry* stop. Because plaintiff refused to comply with Officer Segovia's lawful order to "come here," the officers had probable cause to arrest him for obstructing (or resisting) a peace officer. See *United States v. Shields*, 789 F.3d 733, 744-47 (7th Cir. 2015); *Tom v. Voida*, 963 F.2d 952, 959 (7th Cir. 1992) (where the defendant defied the officer's order to stop and continued to flee, the officer had probable cause to arrest the defendant for resisting law enforcement); *Johnsen v. Village of Rosemont*, No. 1:10-cv-07097, 2014 WL 4909080, at *7 (N.D. Ill. Sept. 30, 2014) (flight in the face of an order to halt during a police officer's legitimate exercise of investigative authority provides probable cause for the offense of resisting or obstructing a peace officer); *People v. Jones*, 245 Ill. App. 3d 302, 306-07 (1993) (officers had probable cause to arrest for obstruction where they attempted to conduct a *Terry* stop of a group of men suspected to have a shotgun and one of the men fled from the police).

In sum, the officers had probable cause to arrest plaintiff for obstructing a peace officer and unlawfully possessing cannabis and dismissal of his false-arrest and unlawful pretrial detention claims are appropriate. Thus, defendants' motion to dismiss counts I and III of plaintiff's complaint should be granted as a matter of law.

### B. The Unlawful Search Claim

Next, plaintiff asserts that his Fourth Amendment rights were violated because the officers searched his "person and property" without lawful justification. (Pl.'s Compl. ¶¶ 11, 30-31.) Dismissal of this claim is proper because the officers were entitled to conduct a protective pat-down and search incident to arrest.

Warrantless searches are "*per se* unreasonable under the Fourth Amendment unless they fall within 'a few specifically established and well-delineated exceptions.' " *United States v. Charles*, 801 F.3d 855, 860 (7th Cir. 2015) (quoting *Arizona v. Gant*, 556 U.S. 332, 338 (2009)). One such exception allows officers during a *Terry* stop "to frisk a detained person for weapons if the officers have an articulable suspicion that the person is both armed and a danger to the safety of officers or others." *United States v. Leo*, 792 F.3d 742, 748 (7th Cir. 2015). Another exception to the warrant requirement is a search performed "incident to a lawful arrest." *United States v. Jenkins*, 850 F.3d 912, 917 (7th Cir. 2017). "The justification for this exception is the protection of the arresting officer and the preservation of evidence." *Id.* A search incident to an arrest is constitutionally valid if "it does not extend beyond 'the arrestee's person and the area within his immediate control.' " *United States v. Hill*, 818 F.3d 289, 295 (7th Cir. 2016) (quoting *Gant*, 556 U.S. at 339). In short, where there is a lawful arrest, a full search of the person is justified. *Id.*

In the case *sub judice*, the officers were justified in conducting a protective pat-down. At the time of the frisk, the officers knew that plaintiff had come from an area where a person was observed holding a gun and he ran away when the officers attempted to conduct a *Terry* stop. In addition, plaintiff failed to follow instructions to "come here" when ordered to do so. The fact that plaintiff might be armed and his failure to comply with the officer's directive to stop, would have alarmed any police officer and their decision to search for weapons was justified. See *United States v. Radford*, — F.4th—, 2022 WL 2352762 (7th Cir. 2022) (officers were entitled to conduct a frisk where the

defendant exhibited nervous behavior and failed to follow their instructions). The subsequent search

of plaintiff's pants was also lawful. As noted above, Officer Brown felt a large bulge near plaintiff's

knee and plaintiff stated that he had a lot of a weed on him. The conspicuous bulge in his clothing

coupled with his inculpatory statement was sufficient to give rise to probable cause to believe that he

possessed contraband.

Moreover, the search of plaintiff's pants plainly falls within the scope of the search-incident-

to-arrest exception. More specifically, the officers had probable cause to arrest him for obstructing a

peace officer and unlawfully possessing cannabis. As a consequence, it was reasonable for the officers

to search plaintiff's "person and property" in order to remove any evidence or weapons that he might

seek to use. See *Illinois v. Lafayette*, 462 U.S. 640, 644 (1983); *Riley v. California*, 573 U.S. 373, 383 (2014)

("When an arrest is made, it is reasonable for the arresting officer to search the person arrested in

order to remove any weapons that the latter might seek to use in order to resist arrest or effect his

escape."). For all these reasons, the initial frisk and subsequent search of plaintiff's person was justified

and dismissal of his unlawful search claim (count II) is warranted as a matter of law.

### III. THE MALICIOUS PROSECUTION CLAIM

In court IV of his complaint, plaintiff asserts a state law claim of malicious prosecution. The

Illinois Supreme Court has long recognized that " 'suits for malicious prosecution are not favored.'

[Citations.]" *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 24. "To state a cause of action for the tort of

malicious prosecution, the plaintiff must prove five elements: '(1) the commencement or continuance

of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the

proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the

presence of malice; and (5) damages resulting to the plaintiff.' [Citations.]" *Id.* ¶ 26. The failure to

establish any of these elements bars a plaintiff's malicious prosecution claim. *Id.* For the reasons set

forth below, plaintiff failed to allege facts establishing that: (1) defendants lacked probable cause, (2) acted with malice, or (3) the proceedings terminated in his favor.

### A.     The Prosecution was Supported by Probable Cause

The basis for plaintiff's malicious prosecution claim is the same as his false arrest and unlawful pretrial detention claims—he maintains the officers lacked probable cause to prosecute him. (Pl.'s Compl. ¶¶ 36-39.) Although one is a federal constitutional claim and the other is a state tort, the existence of probable cause defeats both. *Young v. City of Chicago*, 987 F.3d 641, 646 (7th Cir. 2021); see also *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) ("Probable cause to arrest is absolute defense to any claim under section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution). As discussed above, the officers had probable cause to arrest and detain plaintiff and his malicious prosecution claim should likewise be dismissed.

### B.     The Officers did Not Act with Malice

Next, plaintiff failed to allege any facts demonstrating that the officers acted with malice. "Malice is defined as the initiation of a prosecution for any reason other than to bring a party to justice." *Rodgers*, 315 Ill. App. 3d at 349. Malice may be inferred from the absence of probable cause, if the circumstances surrounding the commencement of the criminal proceeding are inconsistent with good faith and if the absence of probable cause has been clearly proved. *Aguirre v. City of Chicago,* 382 Ill. App. 3d 89, 97 (2008); *Johnson v. Target Stores, Inc.,* 341 Ill. App. 3d 56, 77 (2003).

Here, the presence of probable cause proves fatal to plaintiff's claim as he has not alleged any facts from which an inference of malice could be made. In fact, the complaint is completely devoid of any allegations supporting its conclusory assertion that the officers acted with malice. Plaintiff has simply recited the elements of a malicious prosecution claim without factual support and his conclusory allegations contribute nothing to the plausibility analysis under *Twombly* and *Iqbal*. See *Freeman v. Gray*, 303 Fed. App'x 358, 362 (7th Cir. 2008) (calling allegation of arrest without probable

cause a "naked legal conclusion" that can be ignored). Since plaintiff has failed to allege facts raising

his malicious prosecution claim "above a speculative level" (*Twombly,* 550 U.S. at 555), he has not

stated a plausible claim to relief.

> ### C.      The Charges were Not Terminated in Plaintiff's Favor

Finally, plaintiff's complaint fails to allege sufficient facts to support his conclusion that the

criminal proceedings were terminated in a manner indicative of his innocence. Favorable termination

is one of the necessary elements of a malicious prosecution action. *Swick v. Liautaud*, 169 Ill. 2d 504,

512 (1996). In *Swick*, the Illinois Supreme Court stated:

> The abandonment of the proceedings is not indicative of the innocence of the accused
> when [it] is the result of an agreement or compromise with the accused, misconduct
> on the part of the accused for the purpose of preventing trial, mercy requested or
> accepted by the accused, the institution of new criminal proceedings, or the
> impossibility or impracticability of bringing the accused to trial.

*Id.* at 513. Additionally, "[t]he circumstances surrounding the abandonment of the criminal

proceedings must compel an inference that there existed a lack of reasonable grounds to pursue the

criminal prosecution. [Citation.] Otherwise, every time criminal charges are [dismissed,] a civil

malicious prosecution action could result." *Id.* at 513-14. Plaintiff bears the burden of pleading and

proving a favorable termination and this burden is met only when he establishes that the dismissal was

entered for reasons consistent with his innocence. *Id.* at 513.

Here, plaintiff did not plead any of the circumstances leading to the dismissal of the criminal

proceedings. Rather, he simply alleges that the criminal case was dismissed because he was not the

armed individual depicted in the POD camera. (Pl.'s Compl. ¶¶ 20-21.). He then leaps to the

conclusion that the State dismissed the charges for that reason. But this is not enough to demonstrate

a favorable termination. While it is true that *someone else* was seen holding a gun that night, it does not

exonerate plaintiff, nor does it mean that the charges were dismissed for *that* reason. The allegations

do not disclose why the prosecuting attorney chose to dismiss the criminal charges, and it is unclear

whether the criminal proceedings were in fact terminated in plaintiff's favor, as he concluded in his complaint. Due to the lack of factual allegations regarding the reasons for the dismissal order, plaintiff has not met his burden of pleading a favorable termination. The bare assertion that the charges against him were dismissed, without stating the circumstances surrounding the dismissal, does not establish that the proceedings were terminated in a manner consistent with his innocence. See *Swick*, 169 Ill. 2d at 514; *Allen v. Berger*, 336 Ill. App. 3d 675, 680-81 (2002). Accordingly, plaintiff has not alleged enough facts on an essential element of his malicious prosecution claim, and dismissal of count V is appropriate.

### IV.  THE INDEMNIFICATION & *RESPONDEAT SUPERIOR* CLAIMS

Finally, plaintiff asserts state law claims of indemnification (count V) and *respondeat superior* against the City (count VI). The indemnification and *respondeat superior* claims are merely another way to hold the City liable for the actions of its employees. See 745 ILCS 10/2-109 (West 2020) (the City is not liable for an injury resulting from an act or omission of its employee where the employee is not liable). Because the underlying claims against the officers must be dismissed, the indemnification and *respondeat superior* claims should likewise be dismissed.

### CONCLUSION

WHEREFORE, defendants respectfully request that this Court dismiss plaintiff's complaint in its entirety with prejudice and grant any further relief this Court deems appropriate.

Respectfully Submitted,


By:   /s/ *Carolyn M. Nevin*
Carolyn M. Nevin
Assistant Corporation Counsel
Attorney No.: 6313594

Jessica Griff, Assistant Corporation Counsel Supervisor
Jordan F. Yurchich, Assistant Corporation Counsel
Carolyn Nevin, Assistant Corporation Counsel
City of Chicago Department of Law

Federal Civil Rights Litigation Division
2 North LaSalle Street, Suite 420
Chicago, Illinois 60602
(312) 744-6905
Carolyn.Nevin@cityofchicago.org
**Attorneys for Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2022, I served the foregoing **Defendants' Motion to Dismiss** upon all counsel of record by filing a copy with the Clerk of the Northern District of Illinois using the Court's electronic filing system.

/s/ *Carolyn M. Nevin*
Carolyn M. Nevin
Assistant Corporation Counsel