IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Terrell Esco, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 22 C 2324 |
| | ) |
| THE CITY OF CHICAGO, a | ) |
| Municipal Corporation; Chicago | ) |
| Police Officers MATT SEGOVIA, | ) |
| RAQUEL ALTRUZ, NIKO LOPEZ, | ) |
| NICHOLAS CLEDON, SEAN DRISKILL, | ) |
| JONATHAN FANTAUZZI, VIOLETA | ) |
| SANTILLAN, ARTHUR BROWN, | ) |
| NATHANIEL J. HOLLIS, MAURICIO | ) |
| RODRIGUEZ, and JAIR TRUJILLO- | ) |
| AYALA | ) |
| | ) |
| Defendants. | ) |

Memorandum Opinion and Order

Plaintiff Terrell Esco sues the City of Chicago and a number of its police officers for constitutional violations he claims they committed in seizing him, searching him, and prosecuting him for weapons offenses. He seeks damages against the individual officers pursuant to 42 U.S.C. § 1983 for alleged Fourth Amendment violations as well as for state law malicious prosecution. Against the City, plaintiff asserts state claims for indemnification and for respondeat superior with respect to the officers' alleged violations of state law.

Defendants seek dismissal of all claims under Fed. R. Civ. P. 12(b)(6), arguing that video footage from several of the officers' body worn cameras ("BWC"), which they argue I may consider because plaintiff references it in his complaint and it is integral to his claims, definitively refutes his allegations and establishes affirmatively that the officers had probable cause for his arrest. For the reasons that follow, I grant the motion.

I.

According to the complaint, Chicago police officers were conducting video surveillance of a residence in the 300 block of North Pine Street when they saw an individual holding a handgun emerge from the residence and approach a vehicle double-parked in the street. When this individual saw the officers, plaintiff asserts, he threw the gun under a parked car and fled. Officers later seized plaintiff, transported him to the police station, and initiated weapons charges against him. The weapons charges were false, plaintiff claims, because defendant officers "can be heard on body worn camera discussing the fact that Plaintiff was not the individual they saw with the gun. Defendant-officers continued to participate in his arrest and/or failed to intervene to stop it." Compl. at ¶ 12.

The complaint goes on to allege that plaintiff was charged in a four-count information and was detained for over year, during which time "Defendant-Officers took steps to continue his criminal prosecution, including, but not limited to: drafting false police

2

reports, giving false information to the State's Attorney's Office, appearing in court, and failing to bring the truth to light." *Id*. at ¶ 20. All of this occurred, plaintiff claims, despite the fact that the officers' BWC footage "confirmed that Plaintiff was not the individual seen with the gun." *Id.* at ¶ 22. Plaintiff claims that the charges against him were "dismissed in a manner indicative of his innocence after defense counsel urged the state's attorney to closely examine the evidence of Plaintiff's innocence tendered in discovery." *Id*. at 22.

II.

A motion to dismiss under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). My review is generally limited to the pleadings, and I must "construe all allegations and any reasonable inferences in the light most favorable to the plaintiff." *Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 512–13 (7th Cir. 2020). Nevertheless, I am "free to consider any facts set forth in the complaint that undermine the plaintiff's claim," including documents or other materials "referenced in the pleading if they are central to the claim," including video footage that "shows in real time the content and context of the alleged wrongs." *Bogie v. Rosenberg*, 705 F.3d 603, 608-09 (7th Cir. 2013). If a video on which a plaintiff relies to support his allegations "clearly

3

contradicts" those allegations, the video controls. *Felton v. City of Chicago*, 827 F.3d 632, 637 (7th Cir. 2016) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)). *See also Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690–91 (7th Cir. 2012).

III.

The parties agree that all of plaintiff's Fourth Amendment claims ultimately turn on whether the defendant officers had probable cause to arrest him.[1] *See Neita v. City of Chicago*, 830 F.3d 494, 497 (7th Cir. 2016) ("[t]o prevail on a false-arrest claim under § 1983, a plaintiff must show that there was no probable cause for his arrest"); *Campbell v. Miller*, 499 F.3d 711, 716-17 (7th Cir. 2007) ("[a] custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification."); s*ee also Zhang v. Schuster*, No. 18-CV-3283, 2022 WL 615015, at *18 (N.D. Ill. Mar. 2, 2022) ("The officers had probable cause to arrest Zhang, so they could conduct a search incident to arrest."); *Lewis v. City of Chicago*, 914 F.3d 472, 477 (7th Cir. 2019) ("a pre-trial detention...both before formal legal process and after—and is justified only on probable cause."). An

---

[1] Probable cause is necessary but not sufficient for a seizure to be reasonable, since reasonableness "depends both on its justification and the manner in which it was effectuated," *Gutierrez v. Kermon*, 722 F.3d 1003, 1008 (7th Cir. 2013). But plaintiff does not claim that his arrest was carried out in an unreasonable manner, so the probable cause issue is dispositive of his claim.

4

arrest is supported by probable cause "if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott v. Sangamon County*, 705 F.3d 706, 714 (7th Cir. 2013). This is "a practical, commonsense standard that requires only the type of fair probability on which reasonable people act." *Gutierrez v. Kermon*, 722 F.3d 1003, 1008 (7th Cir. 2013).

Importantly, however, "police do not always need probable cause to detain an individual when reasonable suspicion exists. Reasonable suspicion amounts to an 'objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.'" *United States v. Lenoir*, 318 F.3d 725, 729 (7th Cir. 2003) (quoting *United States v. Swift*, 220 F.3d 502, 506 (7th Cir. 2000)). The Fourth Amendment allows law enforcement officers to initiate an investigative detention "when the police have reasonable suspicion, supported by articulable facts, that criminal activity is afoot." *United States v. Adamson*, 441 F.3d 513, 520 (7th Cir. 2006) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)).

Here, plaintiff's central theory is that footage from the officers' body-worn cameras shows that the officers knew from the moment they arrived on Pine Street that plaintiff was not the individual observed leaving the surveilled residence with a gun, yet they arrested him, searched him, and instigated criminal proceedings

5

against him for weapons offenses anyway. There is no dispute that plaintiff is not the individual seen by video surveillance; that much is true. *See* Def.'s Mot., ECF 8 at 2 and n.1. But whatever the officers observed of that individual, plaintiff's claim that the officers had no reason to believe that he himself was involved in any unlawful conduct simply cannot be squared with the sequence of events seen and heard on camera.

According to the complaint, the individual who emerged from the residence "threw the gun and ran" as the officers approached, while plaintiff was merely "in the area." Compl. at 6, 9. Plaintiff alleges that "[p]rior to seizing and arresting Plaintiff, Defendant-Officers had not seen Plaintiff engage in any illegal activity[.]" Compl. at 10. But this summary of events ignores everything that happens between the officers' approach and plaintiff's arrest. Footage from cameras worn by Officers Segovia and Cledon shows these officers walking towards the surveilled residence when Segovia suddenly exclaims, "there he is! He's [unintelligible] his gun!" after which both officers begin running up the street in the direction of the residence, with Segovia shouting "hey, come here!" Exh. A (Segovia BWC) at 3:00-3:10. At this point, plaintiff takes off running—a fact he acknowledges.[2] *See* Pl.'s Resp., ECF 17 at 5, 6 ("[d]efendants'

---

[2] Plaintiff asserts that because is not clear from the videos that he heard Officer Segovia's command to "come here," the footage does not establish that the officers had probable cause to arrest him for the offense of obstructing a peace officer. The trouble with this

video exhibit shows Plaintiff running far ahead of the officers" and "shows him being chased by police"). Officer Segovia's BWC shows that Segovia stops outside the surveilled residence, recovers a weapon from under a parked car, and barks commands at the three individuals who remain at the scene. *Id*., at 3:10-4:20. Meanwhile, Officer Cledon's camera shows him running after plaintiff—who is visible up ahead—for several blocks and shouting out plaintiff's trajectory ("going towards Ferdinand"), and physical appearance ("black shirt, white sleeves...dreads") to other officers via radio. Exh. B (Cledon BWC) at 1:55-2:50. As plaintiff disappears into darkness, Officer Cledon reports, "we lost him in the park." *Id*. at 2:56. Seconds later, a voice reports over the radio: "we got him." *Id*. at 3:06.

Officer Cledon's BWC then shows him crossing the park to where multiple police vehicles and a dozen officers surround plaintiff—who, as Officer Cledon described, has "dreads" and is wearing a black shirt with white sleeves. Exh. B at 2:40-2:49. Footage from Officer Rodriguez's body-worn camera depicts plaintiff standing next to a squad car in handcuffs as officers question him. The audio portion of this footage begins with an officer asking, "how much weed you got on you?" Exh. D (Rodriguez BWC) at 1:59. Plaintiff responds, "a lot." *Id*. at 2:02-2:04. Plaintiff then indicates that the drugs are

---

argument is that probable cause is evaluated from the officers' perspective, not plaintiff's perspective.

7

inside his pants leg, and as officers begin searching his pants, he volunteers: "that's why I ran officer." *Id*. at 2:07-2:09. An officer repeats, "why'd you run?" and plaintiff reiterates: "I got a lot of weed on me." *Id*. at 2:19-2:20. An officer then asks, "no gun?" to which plaintiff responds, "no sir." *Id*. at 2:21-22. *See also* Exh. B (Cledon BWC) at 4:19-4:24 (same exchange). Officer Cledon, standing nearby, offers: "we got the gun." *Id*. at 4:25.

Moments later, an officer approaches Cledon and says, "hey that's not the same guy that they were looking at with the camera." *Id*. at 4:50-4:53. This is presumably the centerpiece of plaintiff's claim that the officers knew they had the wrong guy. But the remaining footage, which reveals ongoing radio contact among the responding officers in the moments before, during, and after plaintiff's arrest, adds context to this statement that directly refutes plaintiff's allegations that he was merely "in the area," and that defendant officers "had not seen Plaintiff engage in any illegal activity nor did they have probable cause, reasonable suspicion, or any other lawful basis to stop, detain, or arrest" him. Compl. at ¶¶ 9, 10. To the contrary, it shows that whoever officers observed on the surveillance video, the arresting officers reasonably believed that *plaintiff* threw the gun that Officer Segovia recovered from under the car outside the surveilled residence.

In *Haligas v. City of Chicago*, No. 22 C 313, 2022 WL 2340878 (N.D. Ill. June 29, 2022), I considered the circumstances under which

8

video footage referred to in a complaint could appropriately be relied upon at the motion to dismiss stage. In that case, the plaintiff claimed that she was arrested without probable cause, citing footage from the arresting officer's body-worn camera, which showed statements the plaintiff's ex-husband made outside of the plaintiff's presence. In *Haligas*, as in this case, the plaintiff's claims about what the officers knew at the time they arrested her were based on facts that the plaintiff herself knew only because she had viewed the referenced footage. Under these circumstances, I held that it was appropriate to review the footage, even on a motion to dismiss, under *Scott v. Harris*, 550 U.S. 372, 380-81 (2007), and *Bogie v. Rosenberg*, 705 F.3d 603, 608-09, 610-12 (7th Cir. 2013), explaining that when a video cited in the complaint "utterly discredit[s]" the plaintiff's account of the facts, the most sensible approach is to consider the video but to view it in the light most favorable to the plaintiff. *Haligas*, 2022 WL 2340878, at *10. *See also Hyung Seok Koh v. Graf*, No. 11-CV-02605, 2013 WL 5348326, at *10 (N.D. Ill. Sept. 24, 2013) (considering video submitted with motion to dismiss) (citing *Bogie*, 705 F.3d at 609 ("When an exhibit contradicts the allegations in the complaint, ruling against the non-moving party on a motion to dismiss is consistent with our obligation to review all facts in the light most favorable to the non-moving party.")).

I continue to find that approach to be sensible. Unlike in *Haligas*, however, where I denied the motion to dismiss after concluding that the video footage supported, rather than discredited, the plaintiff's version of events, the only reasonable inference that can be drawn from the sequence of events captured on the BWCs at issue is that plaintiff's arrest was supported by probable cause. Officer Segovia's sudden exclamation, "there he is! He's [unintelligible] his gun!" as he and Officer Cledon arrived at the surveilled residence indicates that he believed *someone* had a gun just before plaintiff took off running.[3] Officer Cledon pursued plaintiff on foot, and moments later, an individual matching the description Cledon provided was apprehended in the location Cledon reported that plaintiff was headed. Meanwhile, back on Pine Street, a voice captured on Officer Segovia's BWC confirms, "we got him in custody," Exh. A (Segovia BWC) at 4:24-4:25, and Officer Segovia reports, "the guy that ran that they grabbed, he's the one I watched put the gun under the car. I just saw him right with my eyes....yeah he threw it, I watched him put it right under the f***ing car." Exhibit A at 10:50-11:10. While it is true that Segovia was not at the scene of plaintiff's arrest, his statement reasonably led the arresting officers to believe that the person they apprehended, whose

---

[3] Officer Segovia's BWC shows three individuals—two in a car and one on the street—who remained at the scene. None of the footage suggests, and plaintiff does not contend, that anyone else was present or fled the scene.

10

physical description corresponded to that of the individual Cledon had pursued from the Pine Street residence, was the same person that Officer Segovia saw throw the gun. In other words, this footage directly contradicts plaintiff's allegation that the BWC footage "confirmed that Plaintiff was not the individual seen with the gun." *Id.* at ¶ 22.

"As the term suggests, probable cause deals not with hard certainties but with probabilities." *Abbott* 705 F.3d at 714 (7th Cir. 2013) (citing *Illinois v. Gates*, 462 U.S. 213, 231 (1983)). To be sure, "mere proximity to suspected criminal activity does not, without more, generate probable cause." *United States v. Richards*, 719 F.3d 746, 757 (7th Cir. 2013). But where additional circumstances would lead a reasonable officer to believe that an individual observed in an area where criminal activity is suspected is or was involved in the criminal conduct, the totality of these circumstances gives rise to probable cause. *United States v. Howard*, 883 F.3d 703, 708 (7th Cir. 2018). Importantly, police officers may rely on information provided by other officers for a probable cause determination. *Id.* at 707. The "collective knowledge doctrine" provides that officers "who actually make the arrest need not personally know all the facts that constitute probable cause if they reasonably are acting at the direction of another officer or police agency." *Id.*

11

In *Lenoir*—a case on which plaintiff himself relies—police officers heard a report over the radio of a disturbance involving an unidentified male with a weapon, then they observed the defendant in the area, apparently intoxicated and carrying a gun. When the defendant saw the officers, he fled into a nearby home as an officer called out, "Police, Stop!" The officers followed the defendant into the home—which, unbeknownst to the officers, turned out to be the defendant's—where they apprehended him and performed a warrantless search that yielded several weapons. *Id*. at 727-28.

The *Lenoir* court denied the defendant's motion to suppress evidence of the weapons, rejecting his argument that police did not have authority to stop him. The court noted that "a person's flight upon seeing the police approach in a high crime area establishes reasonable suspicion to justify a *Terry* stop." *Id*. at 124 (citing *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)). Here, Officers Segovia and Cledon observed plaintiff fleeing not just from a "high crime area" but from a location at which surveilling officers had observed an individual holding a weapon.[4] This is surely enough, under *Lenoir*, to entitle the officers to perform an investigatory

---

[4] While there is no dispute that plaintiff was not the individual whose surveilled conduct prompted the officers to approach the Pine Street residence, the video footage captures Officer Segovia reporting unequivocally that it was *plaintiff* he saw toss the gun under a car. This information was conveyed to the officers present at plaintiff's arrest. *See* Exh. B (Cledon BWC) at 5:58-6:01. (Cledon: "this guy just has weed?" Unidentified officer: "no, he's the one who tossed [the gun]!")

12

stop of the individuals present. Plaintiff's flight at the officers' approach for that purpose reasonably enhanced their suspicion that he was involved in criminal activity.

That one of officers at the scene of plaintiff's arrest remarked that plaintiff was "not the same guy" seen on the surveillance camera does not alter the probable cause analysis. Cledon responded to this observation that plaintiff "was with them...we got that guy too. We got the gun," *id*. at 4:50-4:55, and Cledon later says, "he walked up to the car, tossed the gun, he took off running," *id*. at 5:37-5:40. While these comments, standing alone, do not establish probable cause for plaintiff's arrest, taken together with Officer Cledon's description of the individual he was pursuing and Officer Segovia's report that the person Officer Cledon ran after was the same one he saw toss the gun under the car—all of which was captured in the BWC audio and video footage—they leave no doubt about the officers' collective belief that plaintiff tossed a gun and ran at the approach of law enforcement. That conduct is sufficient to warrant at least an investigative stop under *Terry* and its progeny. *See, e.g., United States v. Cherry*, 920 F.3d 1126, 1136 at n. 3 (7th Cir. 2019) ("[a]lthough flight cannot, on its own, provide probable cause to arrest, the determination of probable cause depends on a totality of circumstances that may take into account 'commonsense judgments and inferences about human behavior,' including unprovoked flight." (citing *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000)).

Then, upon his apprehension, plaintiff "revealed in short order evidence that gave [the officers] probable cause for a full-blown arrest," *Matz v. Klotka*, 769 F.3d 517, 525 (7th Cir. 2014), namely, that he was secreting a significant quantity of drugs in his pants leg. Even assuming that officers had, up to that point, only a reasonable suspicion of plaintiff's involvement in criminal activity, his admission—clearly audible on footage captured by Officer Rodriguez's BWC—that he had "a lot" of weed on him was sufficient to give the officers probable cause for his arrest. *See generally* 720 Ill. Comp. Stat. Ann. 550/4 (setting forth criminal charge for possession of cannabis). While it is true that plaintiff was ultimately charged with weapons offenses, not a drug offense, "[a]n arrest may be supported by probable cause that the arrestee committed any offense, regardless of the crime charged or the crime the officer thought had been committed." *United States v. Shields*, 789 F.3d 733, 745 (7th Cir. 2015).

The upshot is that the very videos whose content plaintiff cites to support his theory that the defendants knowingly arrested, searched, and prosecuted him without probable cause establishes just the opposite. Even taking plaintiff's allegations in the light most favorable to him, it is clear from the video and audio footage of the events as they unfolded, taken from the officers' perspective, that the defendant officers had probable cause to arrest him. This conclusion, as all agree, is fatal to all of plaintiff's claims.

14

III.

For the foregoing reasons, defendants' motion to dismiss is granted.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: January 17, 2023